IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ROBERT GILJEN, ) | |
| ) | Case No. 15 CV 10388 |
| Plaintiff, ) | |
| ) | JUDGE BLAKEY |
| vs. ) | |
| ) | Magistrate Judge Rowland |
| CITY OF CHICAGO, SIDNEY COLEMAN, JR., ) | |
| and JONAS DODOO, ) | |
| ) | |
| ) | |
| Defendants. ) | |

## DEFENDANTS ANSWER TO PLAINTIFF'S COMPLAINT

Defendants City of Chicago, Sidney Coleman, Jr. and Jonas Dodoo (herein "Defendants") by and through one of their attorneys, Jason Marx, Assistant Corporation Counsel, for their answer to Plaintiff's Complaint, states as follows:

1. This is an action for money damages brought pursuant to 42 U.S.C. § 1983, and the common law and statutes of the State of Illinois.

**ANSWER**: Admit.

2. Jurisdiction for Plaintiff's federal claims is based on 28 U.S.C. §§ 1331 and 1343(a). Jurisdiction for Plaintiff's state claims is based on supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a).

**ANSWER**: Admit.

3. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b), in that the claims arose in this district as alleged below.

**ANSWER**: Admit.

### Parties

4. Plaintiff Robert Giljen is a resident of Chicago, Illinois.

**ANSWER**: Upon information and belief, Defendants admit the allegations contained in this

paragraph.

5. Defendant Officers Sidney Coleman, Jr., Star 5646, and Jonas Dodoo, Star 13259, are duly appointed and sworn Chicago Police officers. At all times relevant to this Complaint, the Defendant Officers were acting in the course and scope of their employment, and under color of state law, ordinance and/or regulation.

**ANSWER**: Defendants deny Sidney Coleman, Jr. is currently a duly appointed and sworn Chicago Police officer and admit the remaining allegations contained in this paragraph.

6. The Defendant Officers are sued in their individual capacities.

**ANSWER**: Defendants admit Plaintiff purports to sue the Defendant Officers in their individual capacities.

7. Defendant City of Chicago is a municipal corporation, duly incorporated under the laws of the State of Illinois, and is the employer and principal of the Defendant Officers.

**ANSWER**: Defendants admit the City of Chicago is a municipal corporation, duly incorporated under the laws of the State of Illinois. Defendants admit the City of Chicago is the employer and principal of Defendant Dodoo and deny it is the employer and principal of Defendant Coleman.

**Facts**

8. On Saturday, April 26, 2014, Plaintiff Robert Giljen was returning home from his son's swimming lesson, accompanied by his wife (Dorota Giljen), and children (Damian, aged nine-years-old at the time, and A.G., aged twenty-seven-months-old at the time).

**ANSWER**: Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.

9. At around 5:30 p.m. Plaintiff and his family entered the Chicago Red Line station.

**ANSWER**: Defendants admit Plaintiff, his wife and others, who may have been his children, were at the Chicago Red Line Station around 5:30pm and lack knowledge or

information sufficient to form a belief as to the truth of the remaining allegations contained in this paragraph.

10. Dorota Giljen used her Ventra fare card to pay for her fare.

**ANSWER**: Denied.

11. Upon paying for her fare, because she had A.G. in the stroller, Ms. Giljen entered the station through the handicap gate.

**ANSWER**: Defendants admit Ms. Giljen and a child entered through the handicap gate at the station but deny the remaining allegations contained in this paragraph.

12. No fare was required for A.G. since he was only 27 months old.

**ANSWER**: Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.

13. Plaintiff used his Ventra fare card to pay the fare for ten-year-old D.G.

**ANSWER**: Denied.

14. Plaintiff then used his Ventra fare card to pay for his fare.

**ANSWER**: Denied.

15. Plaintiff began walking to where his family was waiting for him.

**ANSWER**: Denied.

16. At that time, one of the Defendant-Officers approached and accused Plaintiff of not paying his fare.

**ANSWER**: Defendants admit that at some point, one of the Defendant-Officers approached Plaintiff but deny the remaining allegations contained in this paragraph.

17. At the time the Defendant-Officer made this accusations, Plaintiff was holding his Ventra fare card in his hand.

**ANSWER**: Defendants admit at some point, Plaintiff was holding his Ventra fare card in his hand, and deny the remaining allegations contained in this paragraph.

18. The Defendant-Officer snatched Plaintiff's Ventra fare card out of his hand.

**ANSWER**: Denied.

19. The Defendant-Officer tapped Plaintiff's fare card at another turnstile, deducting another fare from the balance of the card.

**ANSWER**: Denied.

20. Plaintiff offered to log into his Ventra account and his bank account on his phone to prove he had just paid the fare.

**ANSWER**: Denied.

21. Plaintiff suggested they speak with the Chicago Transit Authority employee working at that station to verify Plaintiff had paid his fare.

**ANSWER**: Denied.

22. The Defendant-Officer denied that request too.

**ANSWER**: Denied.

23. The other Defendant-Officer arrived at the scene at that time in response to the first Defendant-Officer's request.

**ANSWER**: Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.

24. Plaintiff attempted to explain to the second Defendant-Officer that he had paid his fare.

**ANSWER**: Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.

25. The first Defendant-Officer insisted that Plaintiff had not paid his fare.

**ANSWER**: Admit.

26. One of the Defendant-Officers grabbed Plaintiff by the arm.

**ANSWER**: Defendants admit at some point, one of the Defendant-Officers touched Plaintiff by the arm, but deny the remaining allegations contained in this paragraph.

27. Plaintiff asked why he was grabbing his arm.

**ANSWER**: Denied.

28. The Defendant-Officers told Plaintiff they were arresting him and taking him to the police station.

**ANSWER**: Defendants admit at some point, the Defendant-Officers told Plaintiff he was under arrest and he would be transported to a police station, but deny the sequence of events as alleged.

29. Plaintiff's family was watching the incident; Plaintiff's son D.G. was crying.

**ANSWER**: Defendants admit a child was crying at some point during this incident, but lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.

30. The Defendant-Officers then threatened to slam Plaintiff to the ground.

**ANSWER**: Deny.

31. The Defendant-Officers handcuffed Plaintiff.

**ANSWER**: Admit.

32. The Defendant-Officers took Plaintiff to a room in the train station.

**ANSWER**: Admit.

33. In the utility room, the Defendant-Officers searched Plaintiff's person.

**ANSWER**: Admit.

34. One of the Defendant-Officers seized Plaintiff's identification and Ventra fare card and spoke to a CTA employee working at the station.

**ANSWER**: Defendants admit at some point, the Defendant-Officers did the acts alleged but deny the sequence of events as alleged.

35. The Defendant-Officers then told Plaintiff to sign a citation.

**ANSWER**: Defendants admit at some point, Defendant-Officers told Plaintiff to sign a citation but deny the sequence of events as alleged.

36. Plaintiff asked the Defendant-Offices to explain the consequences of signing the citation.

**ANSWER**: Denied.

37. The Defendant-Officers would not explain the citation or the significance of signing.

**ANSWER**: Denied.

38. Plaintiff did not sign the citation.

**ANSWER**: Admit.

39. The Defendant Officers took Plaintiff to a police station.

**ANSWER**: Defendants admit Plaintiff was taken to a police station.

40. Plaintiff's person was again searched at the police station.

**ANSWER**: Admit.

41. Plaintiff was handcuffed in lock-up for about 1-2 hours before he was processed.

**ANSWER**: Denied.

42. While being held in lock-up, Plaintiff was forced to disrobe for another search of his person.

**ANSWER**: Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.

43. After he was processed, Plaintiff was held in custody for about another 1-2 hours before he was finally released.

**ANSWER**: Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.

44. The Defendant Officers charged Plaintiff with theft of labor/services/property.

**ANSWER**:   Admit.

45.   The criminal case was dismissed.

**ANSWER**:   Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.

46.   Each individual Defendant Officer acted willfully and wantonly, maliciously, and with a conscious disregard and deliberate indifference to Plaintiff's rights.

**ANSWER**:   Denied.

47.   As a direct and proximate result of the acts of the Defendant Officers described above, Plaintiff suffered damages including loss of physical liberty, lost wages, and emotional distress.

**ANSWER**:   Denied.

## COUNT I
### (42 U.S.C. § 1983 - False Arrest)

48.   Plaintiff re-alleges paragraphs 1 through 47 as if fully set forth herein.

**ANSWER**:   Defendants re-allege their answers to paragraph 1 through 47 as if fully set forth.

49.   Defendant Officers arrested plaintiff.

**ANSWER**:   Admit.

50.   Defendant Officers did not have an arrest warrant, probable cause, or any other legal justification to arrest plaintiff.

**ANSWER**:   Denied.

51.   The arrest of Plaintiff without any legal justification or probable cause violated his Fourth Amendment right, as guaranteed by the Fourteenth Amendment, to be free from unreasonable seizures.

**ANSWER**:   Denied.

## COUNT II
### (Indemnification Claim pursuant to 734 ILCS 10/9-102)

52.   The acts of the Defendant Officers described in the above claims were committed

in the scope of employment.

**ANSWER**: Defendants admit Defendant Officers were acting in the scope of their employment but deny they engaged in the misconduct complained of.

53. Pursuant to the Illinois Tort Immunity Act, 734 ILCS 10/9-102, Defendant CITY OF CHICAGO is liable for any judgments for compensatory damages in this case arising from the Defendant Officers' actions.

**ANSWER**: Defendants admit to all duties imposed by law but state those duties are not accurately stated herein, therefore, Defendants deny the allegations contained in this paragraph.

**WHEREFORE**, Defendants demand judgment in their favor and against Plaintiff, costs of suit, and any other such relief that the Court deems just or appropriate.

## AFFIRMATIVE DEFENSES

I. Individual Defendants are government officials, namely police officers, who performed discretionary functions. At all times material to the events which are alleged in Plaintiff's Complaint, a reasonable police officer objectively viewing the facts and circumstances that confronted said Individual Defendants could have believed their actions to be lawful in light of clearly established law and the information that said Defendants possessed. Individual Defendants, therefore, are entitled to qualified immunity as a matter of law.

II. To the extent Plaintiff has failed to mitigate any of his claimed injuries or damages, any verdict or judgment obtained by Plaintiff must be reduced by application of the principle that Plaintiff had a duty to mitigate his claimed injuries and damages, commensurate with the degree of failure to mitigate attributed to Plaintiff by the jury in this case.

III. Any award of damages against Defendants shall be reduced in proportion to the comparative fault of Plaintiff's own acts or omissions, including but not limited to his own negligent, intentional, or willful and wanton conduct which proximately caused the claimed injuries and damages. In addition, at the time of the actions alleged in Plaintiff's Complaint, 735 ILCS 5/2-1116 was in effect. This statute reduces a Plaintiff's recovery according to his or her contributory negligence and bars his or her recovery entirely when a plaintiff is more than fifty percent (50%) of the proximate cause of the injury or damage for which recovery is sought.

IV. Defendant City of Chicago is not liable to Plaintiff is its employees or agents are not liable. 745 ILCS 10/2-109.

V. Under the Tort Immunity Act, Individual Defendants are not liable for any injury allegedly caused by the instituting or prosecuting of any judicial or administrative proceeding when done within the scope of their employment, unless such action was done maliciously and without probable cause. 745 ILCS 10/2-208.

VI. Under the Tort Immunity Act, Individual Defendants are not liable for any injury caused by the action or omission of another public employee. 745 ILCS 10/2-204.

VII. Under the Tort Immunity Act, Individual Defendants are not liable for any injury unless their act or omission in the execution or enforcement of any law constituted willful and wanton misconduct. 745 ILCS 10/2-202.

VIII. To the extent Plaintiff's prayer for relief includes a request for punitive damages, punitive damages are not recoverable against Defendant the City of Chicago. 745 ILCS 10/2-102.

## **JURY DEMAND**

Defendants demand a trial by Jury.

Respectfully submitted,

/s/____*Jason Marx*_____
JASON MARX
Assistant Corporation Counsel
30 N. LaSalle Street, Suite 900
Chicago, Illinois 60602
(312) 742-3902
Atty. No. 6279266